and Ms. Cadiz. I've probably mispronounced your name and I hope I'm correct. You're close. Okay. Good afternoon. May it please the Court. I'm Allison Cadiz, Counsel for Petitioner Munchauser Abushagif. This petition for review is about proper agency procedure and the BIA's failure to follow that procedure here. The Supreme Court's recent decision in Ninh Dai explains that the IJ makes credibility determinations based on live testimony, considering factors like demeanor and candor and consistency of testimony. That credibility determination is, as the Supreme Court put it, quite helpful for later review when the Court of Appeals need only find that it's supported by substantial evidence. A motion to reopen is different. Because it's decided on the papers alone, seven circuits have recognized that credibility determinations are inappropriate and that the facts alleged in support of a prima facie case must be accepted as true unless inherently unbelievable. Do you agree that in this circuit on a motion to reopen, as our Court has said, I'm quoting, we must affirm the BIA's decision as long as it is not capricious without foundation in the evidence or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach? Do you agree that that's the standard that we're bound by in this case? Yes, Judge Smith. I agree that that's the general standard for a motion to reopen. But this court also acknowledged in Singh v. Gonzalez that when this court is reviewing questions of law, that the standard is de novo, that this court's consideration, this court's review is less obsequious. And here we have two questions of law. The first is whether the inherently unbelievable standard applies in the Fifth Circuit. And the second is whether the BIA actually applied that standard here. These are both questions of law that this court should review de novo. Also, could we rule in your favor without violating or without ignoring Gonzalez-Cantu? Sorry? Gonzalez-Cantu. Could we rule in your favor without running afoul of the prior jurisprudence? Which case? The Gonzalez-Cantu case, I believe it is. That's the one I quoted. Yeah. Oh. Can you win under irrationality? Judge Smith asked about the standard, and that's from Gonzalez-Cantu. I guess my question is more in terms of the rule of orderliness, that if we apply that standard, will it prevail, is my question. The highly deferential standard, Your Honor. The court can still reverse the agency's decision despite that standard, given this court's de novo review for questions of law. If the agency committed legal error, that's an abuse of discretion. This court made that clear in seeing the Gonzalez. So how would you succinctly describe or express the error in law that you say was made? The agency didn't apply the correct standard here, Your Honor. The standard is that the facts alleged in support of a prima facie case must be accepted unless they are inherently unbelievable. The BIA didn't apply that standard here. And in addressing that, we need to look at what the BIA actually said in its decision and also what it didn't say. So the BIA never found that any of the facts alleged in Mr. Abushagib's application were beyond belief or incredible or so clear that an in-person hearing would be pointless. That's really what the inherently unbelievable standard does. It allows the agency to screen out cases where a hearing would be pointless. The BIA never found that. What the BIA did say was that it required credible and corroborating and persuasive evidence. That's not what the standard is. The BIA applied an overly demanding standard, and that led it to conclude that there were various supposed inconsistencies in the written application, none of which were actual inconsistencies. So what do you do with Garland v. Ming Dai? Judge Smith, I think Ming Dai is helpful to our case. Ming Dai makes clear that the I.J. . . . It sets forth the proper procedure for making credibility determinations. It starts with the I.J. . . . who, at an in-person hearing, assesses credibility. There was a good credibility determination made in both of the underlying cases in Ming Dai. There was a colloquy with the immigration judge. The immigration judge probed potential inconsistencies, followed up on the written. There was a written report. The immigration judge asked about that. That's how it should be done. That's how credibility determinations should be made. So Ming Dai supports the application of the inherently unbelievable standard. There's no reason to think that credibility determinations can be credibly made based on paperwork alone. The inherently unbelievable standard is also consistent with the statute, and that also makes this case different from Ming Dai. In Ming Dai, the Ninth Circuit's deemed true or credible rule was inconsistent with the I.N.A. The Supreme Court said it can't be squared with the language of the statute. Here we have a standard that is consistent with the language of the statute, which provides that—refers to facts that will be proven at a hearing to be held if the motion is granted. That's 8 U.S.C. 1229 A.C. 7B. It's a very—basically, the inherently unbelievable standard is, if anything, a gloss on that statute that gives the agency a little bit of wiggle room to screen out frivolous cases where, as I mentioned, it would be pointless for the case to go to a hearing. As the Department of Justice pointed out in its June 6th letter to us, in Ming Dai, the Supreme Court rejected the concept that there could be a judge-made standard overlaid on the statute, and you just used the word embellishment, so isn't that exactly what you're urging us to do? No, Judge Smith. Ming Dai, in referring to that general principle, cites its decision in Vermont Yankee, and that case says that judge-made rules can't impose procedural requirements on agencies, or generally can't do that unless it's compelled by the statute. The inherently unbelievable standard isn't imposing any sort of procedural requirement on the agency. It's actually giving the agency more flexibility than it would otherwise have under the statute. If this court rejects the inherently unbelievable standard and stays true to the statute, which again refers to facts that will be proven at a hearing, everything would have to go to a hearing. The agency wouldn't even be able to kick out cases that were inherently unbelievable. So I don't think that general principle that's cited in Ming Dai applies here. Do you agree that there are some pretty serious inconsistencies in the factual record as to your client's background and experiences? No, Your Honor. I don't think that there are any inconsistencies there. Well, he filled out a form that said no military service. Those are my words, but you know what I'm talking about. And now later he claims military service, and there was inconsistency in his father's injury as to whether it was a result of torture or whether it was a serious medical procedure that he had been through. Those are just two of the inconsistencies that I see in this record. So, Judge Smith, I'll address each of those. The first example that you noted involving the application, Mr. Abushagib didn't say no military service. He just didn't write that down. It was an omission. It wasn't an inconsistency. And we're looking at a written submission that Mr. Abushagib submitted pro se in his second language. It's not an inconsistency. It's certainly something that the IJ would want to ask him about at a hearing, and that would be perfectly reasonable. But it's not inherently unbelievable that he didn't write that down, particularly given that when he filled out that application pro se, Qaddafi was in power. As to the amputation example, we have Mr. Abushagib's sworn statement that his father was tortured, and we have a medical record from a Tunisian medical record, translated from French, that says he had an underlying medical condition. It is not inconsistent that Mr. Abushagib had an underlying medical condition, or his father, excuse me, that he had an underlying medical condition and that he was also tortured. My difficulty, just so you know, is if we're assessing a denial of a motion to reopen for its rationality only, it wouldn't seem that it's irrational to have a corroboration requirement, nor would it seem irrational for the BIA to point out an inconsistency from an earlier asylum hearing, 2011 to 2019. So, if we apply the irrationality test, I don't see how you can prevail. But your argument is primarily, no, in the context of a motion to reopen, if an alien submits an affidavit, it has to be credited at the BIA level, unless it's inherently unreliable, or is your argument that that's only true when the motion to reopen turns on changed country circumstances, and therefore something like sexual orientation or religious affiliation aren't things that he brought up at all before? Which is it? Your Honor, I think it's the former, but that's the standard always, that the facts allege in support of a crime of faith. Any time an alien moves to reopen, because if I'm, correct me if I'm wrong, I thought this fellow said he would leave in 2011. That's correct. But then he doesn't, and they reapprehend him much later, and it would be quite opportunistic and available for any alien to say, oh, wow, in Libya, look, ISIS has taken over, it's a caliphate, what do they do? They behead Christians. I'm going to say I'm now a Christian. And that affidavit alone requires that it go to an IJ hearing? Your Honor, well, a couple points. First, we have to look to the statute. The statute tells us that the facts will be proven at a hearing. But regardless, the applicant has to provide new material evidence in addition to establishing the evidence. But I thought the regs say for a motion to reopen provide affidavits and other evidentiary material. So how is it irrational for the court to say we want that other evidentiary material? We want corroboration. It can't just be you saying I managed to escape from you, I see what's changed, I'm going to just submit an affidavit saying I fit into what's changed. Do you think all those have to go back to an IJ? Well, Your Honor, a motion to reopen, it has very strict limits. In addition to the requirements we've been discussing, it has other limits. So you can only file one. It has to be within 90 days. And if you don't do that, then you have to show changed country conditions. These cases seem to—they typically are involving changed country conditions, as you noted. And oftentimes the cases are denied for failure to show changed country conditions. There's about five of those cases cited in the briefing. It's difficult to show that. And again, we have to look to the statute. It tells us that the facts will be proven at the hearing. And given that the agency, neither the IJ nor the BIA, can make credibility determinations based on the papers alone, and the statute makes that clear as well, it sets forth the framework for making credibility determinations. It can't throw out these cases at the motion to reopen stage. Could you just answer—and I didn't break it down in questions, but would you agree a corroboration requirement is not irrational? Your Honor, perhaps it's not irrational, but it's not consistent with the statute. And it's not consistent with the inherently unbelievable standard that seven of this Court's sister circuits have adopted. If a statement in an affidavit supporting a prima facie case is plausible, then corroboration isn't needed. The applicant should have the opportunity to have a hearing at which corroboration can be requested. And that's all that Mr. Abushagif is seeking here. He established changed country conditions. He met that heavy burden. And he put forward a plausible written story that establishes a prima facie case. He should be allowed to have a hearing at which he can prove the truth of the facts alleged. The BIA applied an overly demanding standard and denied him that opportunity. Judge Smith, may I ask one more question? I don't remember the BIA ruling. Did it point out that he had not voluntarily left and had committed crimes subsequent, or would that not be relevant? Can the BIA not consider both those factors in its consideration of his motion to reopen later? Do you see my point? I think it depends on what exactly the BIA is considering. I hear that does not establish that his story is inherently unbelievable. It's certainly something that the IJ, I presume, would ask him about at a hearing. Right. Okay. Thank you. We've asked you a lot of questions. I don't know whether there's anything else that you didn't get to. If there is anything else, you can have one more minute to do that. But don't just repeat what you've already told us. If there's something new, you have a minute. Nothing new. Okay. Two quick points. First, as to the claims based on religion and sexual orientation, there was no determination that anything there was incredible or inherently unbelievable. Those were plausible. Going back to Judge Higginson's questioning, the BIA erred by requiring corroboration. On the Kat claim, the BIA didn't even address it. The government argues that Mr. Abushagib didn't exhaust that argument, but the Kat claim is referenced nine different times in his brief to the BIA. It's certainly a concrete statement to which Mr. Abushagib can now tie his claim under Omari, and it wouldn't be futile. The argument there has to do with credibility. And so that argument fails for the reasons that I've discussed. All right. Thank you. And you've saved your full time for your book. Ms. Greer? May it please the court, I'm Christina Greer on behalf of the United States Attorney General. When reviewing the denial of a motion to reopen, the court applies the deferential abuse of discretion standard. Under that standard, as Judge Schmitz said earlier, the court should uphold the agency's decision unless it is capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach. The agency decisions here readily withstand such review. The only wrinkle, well, there are several wrinkles, but one for me is a motion to reopen in a changed country circumstance seems different. It almost seems to me like it's a first shot at asylum. Because, again, not even a hypothetical, the allegation is that this ISIS caliphate has taken over. And so he wouldn't have had any reason to have said, I'm bisexual and I'm Christian. That might not have helped him against Gaddafi. So if we agree it's a changed country circumstance, and it's suddenly now this far-right Islamicist group, wouldn't it be like he's filing a new asylum claim? And if that's the case, wouldn't it be true that the IJ, considering it, couldn't just say, I need corroboration or else you lose? So may I clarify your question? Are you asking is it reasonable for the immigration judge to require corroboration? I'm saying that I fully understand our extremely deferential rule when we're reviewing a denial of a motion to reopen. But I'm asking you, isn't a motion to reopen after the government agrees that country circumstances have changed, it does put the petitioner in a whole new world. It's as if he's filing a new asylum claim. That's my supposition. I'm asking you if that's correct. Because suddenly he thinks, oh, my sexuality's really important. So when it comes to the sexual orientation claim, I'll address another aspect of that later. But at least when the... I guess... Well, I'll go ahead and address the sexual orientation claim now. So that is a claim that would have been available to him in 2011. Petitioner states that country conditions have changed. However, in his own declaration, on pages 444 through 46 of the record, the petitioner describes lynchings based on homosexual activity. And additionally, in the 2010 Human Rights Report, at page 484, although petitioner is correct that the report states that individuals... that discrimination is not common based on sexual orientation, in the immediately preceding paragraph, it describes... or the report describes criminal convictions or criminal consequences for homosexuals. You know the record well, but mixed... sexual orientation and religious affiliation were both dealt with by the BIA in the last paragraph. Both of them had said, we deny the motion we opened because there's no corroboration. And I'm asking you to assume that Gaddafi was a secularist and he wasn't persecuting Christians, for example, put bisexuality aside. But all of a sudden we have a group that changed circumstances. He asked, now it's dangerous. Why isn't that really a new asylum claim then? It could be a new asylum claim, but it's not unreasonable to require corroboration of that new asylum claim. The regulations at 1003.23b3, in fact, state that where a motion to reopen is... for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and all supporting documents. And that's after the statement that you stated earlier about how an application or a motion must be supported by affidavits and other evidentiary material. So here the applicant needs to submit the application and corroborating evidence. And it's reasonable for the board and the immigration judge to consider the evidence of... or the absence of corroborating evidence here. For example, the corroborating evidence, especially as to the religious conversion claim, should have been reasonably available, and the petitioner has not claimed that it wasn't. But he submitted evidence from Libya, and so if he knows that he needs to corroborate one claim... I guess his point is, I didn't know every other circuit wouldn't require me to. They'd take me at my word. I'd at least get it tested. So...right. I didn't know I needed to... Where in writing is there a corroboration requirement in a changed country circumstance? If anything, most circuits wouldn't require it. So maybe he's saying, I thought I just was starting, and I was going to present the corroboration when I got to the FactFinder. Well, it is conspicuous in its absence that he corroborated some of his claims with evidence all the way from Libya and Tunisia, but not the claims that where there are... should be corroborating evidence here in the United States where he lives. But also, I would point the court again to 1003.23b.3, which is the general requirements for a motion to reopen. It is only then when you get to the time or the exceptions to filing deadlines, then you have additional requirements if your motion is based on changed country conditions, and that's where we have the new material evidence that was not previously available regarding country conditions. So this applies to not just changed country conditions, but also you should submit all evidence relating to your claim. And so he was on notice that this would be a requirement. And I would like to point out that speaking of the 2011 claim that his father was kidnapped and also his sexual orientation claim, a petitioner waived his challenge to the immigration judges and the board's determination that he did not establish that this evidence was new and previously unavailable. Petitioner instead, in reply, states that, relating to what I was just talking about, that new material evidence doesn't need to be submitted... Once there's new material evidence of changed country conditions, the other evidence doesn't have to be new or material. But again, 1003.23b3 does state that the new material sought to be offered... Or the new evidence sought to be offered must be material and was not available and could not have been discovered or presented at the former hearing. Now, there's a difference between a claim that wasn't relevant at the former hearing. For example, if petitioner had converted but there were no reason he would bring it up because Christians were not being persecuted in Libya, then there wouldn't necessarily have been a reason to present the evidence. But here, at least as to his sexual orientation claim, even his own evidence states that sexual minorities were harmed and lynched in Libya before 2011. And that's... That's sort of my question. But let's focus then on the difficult one. If the Qaddafi regime was secular or he hadn't yet divorced his wife, she hadn't made him convert, he wouldn't have had any reason to bring it up, right? Correct. So then how do we deal with that when a caliphate takes over a country and he wants to say, but I'm Christian? So are you saying if his claim... Ignore everything else. If his claim was just the religious conversion, I think that would be a different case. That could be a different case because... I thought he made three independent grounds. He's just saying, I've got, you know... I'll get killed because I was in the Qaddafi military. And admittedly, that seems to me very inconsistent. Out of luck. You're telling me the record confirms that Qaddafi's regime would have gone after him as a bisexual too. But each one stands alone. So let's discuss the one that you're agreeing is difficult. But is it unreasonable for it to stand or for it to be considered in context if these other claims are rife with inconsistencies? It's not unreasonable for the agency to say, well, your evidence is inconsistent on all of these points. And so we are going to require a little bit more corroboration. I wish they'd actually said that. But that gets to the question I had in a different context. And I'd love the answer because this probably comes up more often. Let's say Ilyin goes to asylum and loses, but he agrees to voluntarily repatriate. But then instead he goes and hides in America and here, I think, commits crimes. Can the BIA consider either of those facts when it denies a motion to reopen? And did it here? Can it and did it? I don't think it did here. I won't say that it can't. I think it could be reasonable if it's relevant. How is that not relevant? Doesn't that go to his credibility? Well, it's not necessarily credibility. More so, can the evidence that's submitted be trusted? Here he's asking us to accept his declaration and ignore the other evidence. At least that's what he argued to the board. So one important thing is to the board, Petitioner argued that you should ignore the other evidence I submitted because I didn't submit it with a certificate of translation. Ignore all that. Take all of my statements and my declaration as true. Well, now Petitioner submits a different argument saying the board should have instead tried to read all of this evidence in a way that makes sense. That's a different argument that's unexhausted. And here Petitioner's declaration appears to be inconsistent with the evidence he submitted from his father. And again, he did not raise the issue of you should have or the board should have found all of these plausible inferences to rule in my favor. That was not presented to the board. But I would like to point out one thing he said about the board's decision. So the board actually did say that I'm trying to find the exact wording. Even accepting that conditions have worsened for Christians and bisexual individuals in Libya, the respondent has not demonstrated that he has a reasonable... I'm sorry. The board does say that especially given the fact that his claims contain many inconsistencies, that it's reasonable for the board to require corroboration of his other two claims. You sure about that? I'm checking. I apologize. It is the immigration judge's decision at page 174. The immigration judge said his bold assertion of conversion in light of other inconsistent and discrepant evidence of record is not sufficiently reliable or persuasive to warrant reopening. And so moving on to the inherently unbelievable standard, first of all, the government does not believe that the court needs to address whether to adopt that standard here because the board indeed mentions the standard, says the Fifth Circuit has not adopted it, but nevertheless, petitioner's statements are inherently unbelievable because of all of the inconsistencies that it pointed out that were not clarified by petitioner. That's incredibly... That's very important to remember to the board. Petitioner did not explain what inferences the board should have drawn and just said, no, ignore that evidence and go with my statement. So a couple of questions on the inherently unbelievable standard. Does the attorney general take the position that we would be free to adopt it if we wanted to or instead that we're bound by the rule of orderliness and that we're not free to do that unless we were to go in bank on that question? Is there a Fifth Circuit precedent that prevents us from adopting that standard even if we were to decide that it's the better standard? I don't think that there's Fifth Circuit precedent preventing it because the Fifth Circuit hasn't addressed this issue head-on. However, Supreme Court precedent does counsel heavily against it because it is a judge-made rule that would be applied to the agency as the government stated in our 28-J letter filed on, I believe, Tuesday. So again, what is the attorney general's position on the fact that there is inconsistency insofar as we have not adopted it? I think probably the Fourth Circuit in bank has rejected it as well, but the briefing is a little uncertain on that. But that does create, on a pretty important issue, a serious inconsistency among the circuits. So why is it that we should not, for purposes of consistency, go ahead and join at least the vast majority of the circuits? The main reason, as I stated, is because it is a judge-made rule and especially after Ming Dai, where the Supreme Court said judge-made rules should not be imposed upon the agency, citing Vermont Yankee, the court should not adopt such a rule. But additionally, I would urge the court to take a look at the, sort of going back and looking at the basis for this inherently unbelievable standard, because it is not as clear that there have been so many circuits that adopted it. May I ask just a version of Judge Smith's question? What was the government's position in the Fourth Circuit en bas case? I don't know, Your Honor. I do know about some Sixth Circuit cases, but I did not... That case is from 1988. I'm not sure that I can find the briefing, but I can take a look and let the court know. But I do know that... I'm a little surprised you weren't saying we're controlled by precedent. I thought we just had our standard review for denials of motion to reopen. It is. What I'm saying is that the court hasn't... So the split exists already, is what I would have thought you'd say, but you're saying we are free as a panel to think about its merits and adopt it if we want, because there's no precedent of ours? That's the government's... And you don't then have a government position as to the validity? So neither one. You don't have a position on our precedent, and you don't have a government position... Oh, I have a government position on the validity of the rule. We argued that in Ding v. Barr in a Sixth Circuit case last year that went up on bunk in the Sixth Circuit. I don't remember if it actually went on bunk or if there was just on bunk filings, but that's at 947 F. 3rd 956, and there we said that it is inconsistent with the voodoo, that this inherently unbelievable standard is inconsistent with the voodoo. So that's the government's position nationwide? Yes. And if there is a split, it'll probably get resolved. So that is a good answer, helpful to me. But then as to our law, or even in the Sixth Circuit, did you say your precedent preexisting as to irrationality controls? You can't adopt the judicial gloss because you've got precedent. So in this circuit, I would say... I will adopt what you're saying, yes. The use of discretion standard is what applies. It seems as though this procedure, though, what they're arguing is that under this abuse of discretion standard, there's still this inherently unbelievable requirement, and so essentially that would be reviewed for abuse of discretion. And that's a question this court hasn't grappled with, so I don't want to say that the panel can't. But one thing I will note is that looking back at all of the circuits, they all go back to a flawed rationale for this standard. So in the Ninth Circuit, all of the case law traces back to Hamid, where the board found an affidavit inherently unbelievable, but the board didn't apply an inherently unbelievable standard. But then if you look at subsequent case law, the Ninth Circuit and then subsequent courts cited it as a rule that it must be accepted as true unless it's inherently unbelievable. But there's no statement that Congress requires that, the statute requires that, or the Constitution requires that. It is merely an artifact that has been brought forward, and in fact is inconsistent with Ubudu, as the Sixth Circuit suggests in their Dang decision. And I would also point out the Halfling decision, which some of the circuits go back to. That decision establishes the requirement by analogizing to summary judgment. But as the Supreme Court in Ubudu stated, a motion to reopen after someone's been found removable and ordered removed, waits several years, the proper analogy there is a motion for a new trial, because that's essentially what you're trying to get. If I may, I'm glad you mentioned likening it to a motion for new trial. Correct me if I'm wrong, there's nothing in the record where assuming, as Judge Higginson was questioning, that he didn't know that he needed some type of corroboration or proof for his late claims regarding his sexual orientation or his religious affiliation. If he didn't know, there's nothing in the record where he came upon finding out that that's the reason it's not going to get reopened. He didn't come back and say, well wait, now that I know I need it, here is some evidence of some corroboration. Is that correct? That's correct, Your Honor. Okay, and my other question, which is I think the C.A.T. claim has been kind of pushed to the side because it's not the main event here, but you'll agree with me that there's nothing in the BIA decision that talks about the C.A.T. claim. Is that correct? Well, the C.A.T. claim is woven into his asylum and withholding claim. They aren't separate. They are based on the same facts, and so it's still the reliability of his statement that undergirds the C.A.T. claim. And so that's your argument, that it would be futile to tell the BIA that they needed to address that? Do I understand that correctly? Yes, and there's also an exhaustion argument because although he does mention his C.A.T. claim throughout the appeal brief, he doesn't fault the immigration judge for failing to do a separate C.A.T. analysis. That is a new claim at this court, and so it's unexhausted. But to the extent he mentioned his C.A.T. claim throughout his appeal brief, it was always in connection with asylum and withholding. Asylum, withholding, C.A.T. It was not discussed separately. So, Your Honors, if you have no further questions, thank you. All right, thank you, Ms. Brewer. All right. Just a few points, Your Honors. First, I'd like to point out that the government in its briefing acknowledges there has been changed country conditions as to all three claims. It notes that that's undisputed in this case. As you noted, Judge Higginson, it's as if he has a new asylum claim. He's met his heavy burden of establishing changed country conditions. That's the language that this court used in its Nunez v. Sessions decision. It's hard to show changed country conditions, and Mr. Abushagib did that here. It's not disputed. Ultimately, what this comes down to is his credibility, and the Supreme Court has been very clear or is very clear in Ming Dai that credibility determinations are made based on in-person testimony. We can't... The facts alleged here are plausible, and that's what the inherently unbelievable standard is doing. It's just assessing whether the facts alleged are plausible such that it makes sense to assess the applicant's credibility at an in-person hearing. If he explicitly contradicted something he said in 2011, you'd agree that BIA, even though it's not a fact finder, could take note of that? I think yes, Your Honor. I would have to know exactly, you know... So isn't that... I mean, I don't mean to push you in the way I'm looking at this, but doesn't that mean his religion claim is really the strongest one he'd have? Because it's hard to say it's irrational that they felt when he was asked about military, he didn't answer. Perhaps, Your Honor. It is certainly a strong claim. And on the corroboration point, just to direct the court to the Seventh Circuit's decision in FESA-HI-A, I'm not sure I'm saying that correctly, but that court explained that we have never required more than an applicant's affidavit  and specifically as to religion, and we don't put it under the microscope in the same way. Mr. Abushagib's affidavit discussing his religion was very specific, and as the Seventh Circuit said, there's no reason to question that someone would convert to the religion of their spouse. In all these other circuits, is it just automatic if you attach the affidavit, you will always get an IJ hearing? That would just... What's the limiting principle to that? The limiting principle is the new material evidence, and typically changed country conditions. These cases are typically, the motions are typically denied for failure to establish new material evidence. It's very difficult to do. But I thought your theory is that it's just him swearing to it. He doesn't need to corroborate. How is it difficult to offer new material evidence if all you have to do is swear to some new protected category? Typically, at least in the case of changed country conditions, Judge Higginson, you have to provide... You have to tie it back to whatever oppressive evidence. Yeah, and that's what Zhao, a case that the government relies on, says. You have to provide background. In terms of the changed country conditions analysis, you have to provide background information about the country. Mr. Abushagib submitted hundreds of pages about the conditions in Libya and showed that country conditions have changed in Libya as relevant to his different claims. That's very hard to do. And we see that in the Nunes v. Sessions decision by this court, also Coraine v. Barr and others, that the applicant couldn't show changed country conditions, that there wasn't a change that was material or there was some evidence but it was available the first time around. So that is the limiting principle here. And that's why these motions are so hard to win because it's difficult to show... It's very difficult to show changed country conditions. On changing gears a little bit, unless you had... The Supreme Court's decision in Abudu very narrowly talks about the new material evidence requirement. It expressly declines four different times to address the prima facie case requirement. To the extent that the government... Excuse me, to the extent that the Supreme Court was talking about the standard for a new trial, it was talking about the standard for putting forward new material evidence. It was not talking about what's required for a prima facie case. And in thinking about a prima facie case, I think it's helpful to just go back to the basic definition of what that is, which is just that there's sufficient evidence from which a trier of fact can conclude in a party's favor. That's consistent with the inherently unbelievable standard. The inherently unbelievable standard is also consistent with this circuit's precedent. In the Baromnia decision, this court explained that the BIA is to consider the allegations in support of a prima facie case to a limited extent and is not to prejudge the merits of the application. The government doesn't address that case or ultimately really address the standard or the decisions by most of this court's sister circuits. All right, your time has expired now. Thank you.  The court is in recess.